UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAVIER MARTIN-MUNOZ,<br><br>Defendant. | No. 1:17-cr-00066-DAD-BAM<br><br>ORDER DENYING DEFENDANT MARTIN-MUNOZ'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. Nos. 18, 23) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Javier Martin-Munoz. (Doc. Nos. 18, 23.) That motion is based in part on the purported risks allegedly posed to defendant by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On April 16, 2018, defendant Martin-Munoz entered a plea of guilty to Count One of the indictment in this case charging him with reentry of a deported alien without permission in violation of 8 U.S.C. § 1326(a). (Doc. Nos. 15, 16.) On April 18, 2018, the court sentenced defendant to a term of imprisonment of 48 months in the custody of the U.S. Bureau of Prisons ("BOP"). (Doc. No. 17.) The court also imposed the mandatory $100.00 special assessment. (Doc. No. 17 at 4.)

1

Defendant is currently serving his sentence at CI North Lake Correctional Facility in Baldwin, Michigan. (Doc. No. 23 at 2.) As of the date of this order, defendant Martin-Munoz has served approximately 39 months, or 81% of his full custodial 48-month sentence. (Doc. No. 26-1 at 4.) Accounting for good time credit, his projected release date is July 18, 2021 (*Id.*)

On December 21, 2020, defendant filed a *pro se* motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 18.) The court then referred defendant's motion to the Federal Defender's Office. (Doc. No. 19.) On April 5, 2021, appointed counsel filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on behalf of defendant Martin-Munoz. (Doc. No. 23.) The government filed its opposition to the pending motion on May 11, 2021. (Doc. No. 26.) Defendant did not file a reply.

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit recently held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g., United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have

---

[3] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary

5

> and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A.     Administrative Exhaustion**

Defendant asserts, and the government does not dispute, that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. Nos. 18 at 2; 26 at 2.) Because failure to exhaust is normally viewed as an affirmative defense, which must be pled and proven, the court will accept the government's concession and turn to the merits of defendant's motion.

**B.     Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.) Moreover, in light of the Ninth Circuit's decision in *Aruda,* while U.S.S.G. § 1B1.13 may inform its determination, this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

/////

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4]

In support of his pending motion, defendant Martin-Munoz argues that as a Latino man, he is "among those most at risk of serious illness or death if he is exposed to coronavirus." (Doc. No. 23 at 5.) Defendant also argues that "being incarcerated further compounds this risk." (*Id.*) Specifically, defendant argues that "[c]onditions of imprisonment create the ideal environment for the transmission of contagious diseases." (*Id.* at 6.)

In its opposition to the pending motion, the government argues that defendant Martin-Munoz has failed to carry his burden of establishing his eligibility for compassionate release because the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison cannot independently justify compassionate release. (Doc. No. 26 at 5.) The government also contends that defendant's only claim "is that he is a man of color, specifically, Hispanic" but that "the CDC does not recognize being Hispanic as a 'risk' factor for COVID-19." (*Id.*) Finally, the government notes that CI North Lake is currently reporting no active cases of COVID-19 among inmates or staff at that prison. (*Id.* at 3.) Thus, the government avers that because defendant has not presented an extraordinary and compelling reason justifying his release, the court should deny his pending motion.

It is undisputed that the CDC does not recognize race as an increased risk factor for those suffering severe illness from COVID-19. *See People at Increased Risk*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last updated Apr. 20, 2021). However, it is also undisputed that "[r]ace and ethnicity are risk markers for other underlying conditions that affect health, including socioeconomic status, access to health care, and exposure to the virus related to occupation, e.g.,

---

[4] Here, however, because defendant Martin-Munoz is only 50 years old (Doc. No. 26 at 2), his age and age-related factors do not play a role in consideration of his pending motion.

8

frontline, essential, and critical infrastructure workers." *See Risk for COVID-19 Infection, Hospitalization, and Death by Race/Ethnicity*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (last updated May 26, 2021). Indeed, the rate of hospitalization and death for Hispanic or Latino persons is respectively 2.8 times and 2.3 times the rate of White, Non-Hispanic persons. (*Id.*) However, even if, as defendant argues, Latino men are at a higher risk of suffering severe illness from COVID-19, he has not shown or even argued that CI North Lake is unable to monitor and provide adequate medical care to him. *United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) (relevant questions include the adequacy of the care and treatment being provided to the defendant in BOP given his pre-existing conditions and concluding there was no evidence that the circumstances surrounding his health or treatment were extraordinary or compelling). Here, defendant Martin-Munoz has made no showing whatsoever that he is being denied necessary treatment, including prescription medications, or that necessary treatment is being delayed in any way. *See, e.g.*, *United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) (finding that defendant "has been unable to self-care in a BOP facility already overburdened by its COVID-19 response" where defendant could not receive breathing treatments to clear his lungs as required to treat his asthma, despite repeated requests for them); *United States v. Adeyemi*, 470 F. Supp. 3d 489, 516 (E.D. Pa. July 6, 2020) (finding no extraordinary and compelling reason even though a potential lag in medication prescription refills might impact defendant's ability to self-manage his medical conditions).

Moreover, defendant Martin-Munoz has not persuasively argued that he is unable to provide self-care at CI North Lake —whether that means self-care in light of any medical conditions from which he may suffer or his ability to social distance and avoid contracting COVID-19. *See Gorai*, 2020 WL 1975372, at *3 ("[T]he presence of COVID 19 . . . necessitates

a more expansive interpretation of what self-care means" and thus the inability of individuals at high risk of becoming severely ill from COVID-19 to practice appropriate hygiene, wear a mask and maintain social distancing is an inability to provide self–care) (citation omitted). Rather, defendant merely asserts in conclusory fashion that "[c]onditions of imprisonment create the ideal environment for the transmission of contagious diseases." (Doc. No. 23 at 6.) He does not describe any specific conditions he currently faces at CI North Lake nor does he argue that those conditions support the granting of the relief he seeks. For example, defendant does not contend that he lacks access to protective gear and cleaning and sanitizing supplies, or that he is unable to socially distance, or that he is otherwise unable to provide for his own self-care at CI North Lake specifically. *See Gorai*, 2020 WL 1975372, at *3. In fact, defendant does not mention the conditions at CI North Lake at all in his pending motion. In short, defendant Martin-Munoz has not persuasively argued or presented any evidence establishing that the conditions he is currently facing at CI North Lake render him unable to adequately provide for his self-care.

The court also notes that according to BOP's website, as of the date of this order, CI North Lake reported no inmates suffering with active positive tests for COVID-19. *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at www.bop.gov/coronavirus/ (last visited May 31, 2021).[5]

In light of all of the above, the court concludes that defendant Martin-Munoz has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A). Therefore, his motion for compassionate release will be denied.

**C.      Consistency With the § 3553(a) Factors**

Finally, even if defendant Martin-Munoz's motion were supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not

/////

/////

---

[5] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers.

persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[6] *See Parker*, 461 F. Supp. 3d at 979.

As noted above, defendant Martin-Munoz is currently serving a 48-month sentence of imprisonment for illegal re-entry of a deported alien in violation of 8 U.S.C. § 1326(a). (Doc. No. 26 at 2.) With his early acceptance of responsibility, the U.S. Probation Office determined that defendant's total offense level was 21 and his extensive and serious criminal history placed him in criminal history category VI, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 77 and 96 months. (Doc. No. 14.) The probation officer recommended a low-end of the guideline range sentence of 77 months in BOP custody. (*Id.*) After considering all applicable § 3553(a) factors and the circumstances of this case, the undersigned departed on motion of the government under U.S.S.G § 5K3.1 and also varied downward from the advisory guideline range and sentenced defendant to a 48-month term of imprisonment. (Doc. No. 17.)

In his pending motion, defendant argues that a sentence reduction is warranted at this time because the COVID-19 pandemic and the serious risk it presents were not present at the time of his original sentencing. (Doc. No. 23 at 10.) Defendant also contends that his conduct during his imprisonment shows that the purposes of punishment have been met. (*Id.*) Defendant asserts that since he has been incarcerated, "he has been a model prisoner" and that by his conduct he has shown that "he no longer threatens public safety, and that granting him compassionate release would not endanger the community." (*Id.* at 11.) Defendant claims he has participated in and

---

[6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

11

completed a parenting class and has worked for "Wheels of the World," where he restored old wheelchairs for people who cannot afford them. (Doc. No. 18 at 3.) He also notes that upon his release from prison, he plans to return to Mexico to live with his family and begin steady employment. (Doc. No. 23 at 11.)

The government counters that "[n]othing about the COVID-19 pandemic has altered the appropriateness of the Court's original sentence." (Doc. No. 26 at 6.) The government's argument is that defendant's criminal history is severe and involves violent behavior, "and he continued to recidivate while in the United States illegally." (*Id.*)

It is true that defendant Martin-Munoz's current sentence is for a non-violent offense and that he has already served over 80% of the sentence imposed as a result of that conviction. (Doc. No. 26-1.) The court also recognizes and commends defendant on his rehabilitation efforts since his imprisonment in this case, while noting that rehabilitation alone is generally not enough to warrant compassionate release. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3. Nonetheless, given that the advisory sentencing guideline range called for a term of imprisonment of between 77 and 96 months, a reduction of defendant's already somewhat lenient 48-month sentence effectively to one of 39 months would not adequately reflect the seriousness of his offense of conviction, his extensive nature of his criminal history, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota*, No. 5:15-cr-00264-LHK-1, 2020 WL 2733993, at *5 (N.D. Cal. May 26, 2020); 18 U.S.C. § 3553(a).

On balance, the court finds that granting defendant's motion and reducing his sentence to one of time served would not be consistent with the appropriate consideration of the § 3553(a) sentencing factors.

## CONCLUSION

Because defendant Martin-Munoz has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)

/////

or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. Nos. 18, 23) is denied.

IT IS SO ORDERED.

Dated: **May 31, 2021**

_Dale A. Drozd_
UNITED STATES DISTRICT JUDGE